```
                    ✓ FILED        ___ RECEIVED
                    ___ ENTERED    ___ SERVED ON
                         COUNSEL/PARTIES OF RECORD

                         APR - 4 2013

                    CLERK US DISTRICT COURT
                      DISTRICT OF NEVADA
                BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SHAWN CAWLEY,  )
              )      3:11-cv-00565-HDM-VPC
   Plaintiff, )
              )
   v.         )      **REPORT AND RECOMMENDATION**
              )      **OF U.S. MAGISTRATE JUDGE**
OFFICER GOOD, *et al.*, )
              )
   Defendants. )     April 4, 2013
              )

This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant's motion for summary judgment (#30).[1] Plaintiff opposed (#34) and defendant replied (#35). The court has thoroughly reviewed the record and recommends that defendant's motion for summary judgment (#30) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Shawn Cawley ("plaintiff"), a *pro se* litigant, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#18). However, the allegations set forth in plaintiff's complaint pertain to events which occurred during plaintiff's arrest on August 8, 2009 (#6-1, p. 3). On August 4, 2011, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Reno Police Officer Good, unnamed arresting officers, and unnamed medical providers at the Washoe County Detention Center ("WCDC") were deliberately indifferent to plaintiff's serious medical needs, in violation of the

---

[1] Refers to the court's docket numbers.

Eighth Amendment (#6-1). The court screened the complaint pursuant to 28 U.S.C. § 1915A, and permitted plaintiff's Eighth Amendment claim to proceed (#5, p. 4). Thereafter, defendant Good moved to dismiss plaintiff's complaint on the grounds that the Eighth Amendment's protections do not apply to pre-trial detainees (#12). The court denied defendant Good's motion, finding that plaintiff's allegations should be construed as a claim arising under the Fourteenth Amendment's Due Process Clause (#16, p. 6).

Plaintiff alleges that on August 8, 2009, he fell asleep in an unoccupied motor vehicle because he was homeless (#6-1, p. 3). The vehicle's owner "forcefully struck [plaintiff] on the temple area of his head" with a metal pipe and knocked him unconscious. *Id.* Defendant Good and three other police officers arrived to investigate the situation and arrested plaintiff on "larceny auto allegations." *Id.* Plaintiff informed the officers that he was in excruciating pain and had a severe headache from being hit with the metal pipe. *Id.* at 5. A medical unit arrived at the scene, but for "several hours" the arresting officers refused to permit plaintiff to be transported to the hospital, even though plaintiff continued to complain of excruciating pain and plaintiff's head wound was profusely bleeding. *Id.* at 5-6. Plaintiff acknowledges that he was ultimately transported to the hospital, treated, and then released to WCDC. *Id.* at 6.

Plaintiff asserts that for the next six months, he continued to experience pain and blurred vision, and complained to WCDC "nurse Jane Doe #4" and "doctor John Doe #5." *Id.* at 6-7. However, these medical providers merely offered plaintiff "generic aspirin" or told him that the county could not afford his medical treatment and that he would have to wait until he went to prison for further treatment. *Id.* Plaintiff states that once he arrived at prison "it was determined" that he suffered an eye injury from the blow to his head and that his vision in one eye had severely deteriorated due to lack of treatment. *Id.* at 7.

Defendant Good contends that on August 8, 2009, he was working the graveyard shift for the Patrol Division of the Reno Police Department. At approximately 3:56 a.m., dispatch notified defendant Good of an attempted grand theft auto on Ballentyne Way in Reno, Nevada (#30-1, Ex. 1, ¶ 2). At 4:11 a.m., defendant Good arrived at the scene of the reported crime. Officer Andelin, Officer Cragg and Lieutenant Rulla had already arrived, and had taken plaintiff into custody. *Id.* at ¶ 4. Defendant Good met with the victims and took their statements. *Id.* At approximately 4:29 a.m., Officer Cragg placed plaintiff in the rear of defendant Good's patrol car. *Id.* at ¶ 6. Defendant Good was not in the patrol car at that time. *Id.* When defendant Good finished his investigation, he advised plaintiff of his *Miranda* warnings. *Id.* Plaintiff stated that he understood his rights and wished to speak with defendant Good (#30-1, Ex. 1, ¶ 6; #30-1, Ex. 3, p. 4). They then discussed plaintiff's involvement with the attempted grand theft auto. *Id.*

During this conversation, defendant Good noticed that plaintiff had dried blood on the left side of his face. *Id.* Defendant Good also noticed a large bump on the back of plaintiff's neck. *Id.* Defendant Good observed that plaintiff was not bleeding and did not appear to be in acute distress (#30-1, Ex. 1, ¶ 6). However, plaintiff told defendant Good that his head hurt. *Id.* Consequently, at 5:02 a.m., defendant Good called dispatch and asked to have a REMSA ambulance unit sent to the scene for a "conscious breathing subject with a head injury who [is] complaining of pain" (#30-1, Ex. 1, ¶ 7; #30-1, Ex. 2, p. 2). Six minutes later, the REMSA ambulance arrived. *Id.*

The emergency medical technicians evaluated plaintiff's condition (#30-1, Ex. 1, ¶ 7; #30-1, Ex. 4). They found that plaintiff was alert and spoke clearly and concisely, although plaintiff was not "actively cooperative" (#30-1, Ex. 4). Plaintiff informed the REMSA technicians that he had been hit over the head with a metal pipe. *Id.* The emergency medical technicians noted that although plaintiff had a small laceration on the left side of his head, plaintiff's chief complaint was

of shoulder pain. *Id.* Plaintiff denied experiencing any lightheadedness, dizziness or blurred vision, and told the emergency medical technicians that he did not want to go to the hospital with them. *Id.* The REMSA technicians informed defendant Good that even though plaintiff did not want to go to the hospital with them, plaintiff should go to the hospital for a CAT scan (#30-1, Ex. 1, ¶ 7; #30-1, Ex. 3, p. 4; #30-1, Ex. 4). At 5:20 a.m., defendant Good drove plaintiff to Renown Regional Medical Center in Reno, Nevada (#30-1, Ex. 1, ¶ 8). At 5:31 a.m., plaintiff was admitted to the hospital (#30-1, Ex. 5). At approximately 6:43 a.m., Officer Borst relieved defendant Good at the hospital, and defendant Good had no further contact with plaintiff (#30-1, Ex. 1, ¶ 8; #30-1, Ex. 3, p. 4).

Dr. Gary Gansert—who is the emergency room physician who examined plaintiff—reported that plaintiff had a headache and a superficial laceration on his forehead, which required no suturing (#30-1, Ex. 5). Plaintiff never lost consciousness, and had no neck pain, blurred vision, or double vision. *Id.* A CAT scan of plaintiff's head and cervical spine was normal. *Id.* Dr. Gansert prescribed plaintiff Vicodin for pain. *Id.* After plaintiff was released from the hospital, Officer Borst transported him to WCDC (#30-1, Ex. 3, p. 4).

Defendant now moves for summary judgment on three grounds: (1) that defendant Good did not know of, or disregard, an excessive risk to plaintiff's health or safety (#30, p. 7); (2) that there is no evidence that any delay in plaintiff's medical treatment caused plaintiff further injury (#30, p. 9); and (3) that defendant Good is entitled to qualified immunity. *Id.* Defendant Good attaches several documents to support his motion for summary judgment, including: (1) the declaration of Christopher Good (#30-1, Ex. 1); (2) the August 9, 2009, Reno Police Department's calls-for-service inquiry response (#30-1, Ex. 2);[2] (3) plaintiff's arrest report (#30-1, Ex. 3);[3] (4) plaintiff's pre-

---

[2] Authenticated by the declaration of Christopher Good (#30-1, Ex. 1, ¶ 2).

hospital care ("REMSA") summary (#30-1, Ex. 4);[4] and (5) plaintiff's August 9, 2009, medical records from Renown Regional Medical Center (#30-1, Ex. 5).[5]

Plaintiff opposes defendant Good's motion, and argues that defendant Good was aware of plaintiff's injuries, yet left plaintiff handcuffed on the ground for thirty minutes (#34, p. 6).

Defendant Good replies that plaintiff's documentation fails to set forth specific facts that create a genuine issue for trial (#35, p. 2). Defendant Good asserts that there is no evidence supporting plaintiff's claim that defendant Good knew of plaintiff's injury prior to speaking with him around 4:29 a.m., or that he left plaintiff handcuffed on the ground. *Id.* at 3.

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A.   Legal Standards

#### 1. 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured

---

[3] Authenticated by the declaration of Christopher Good (#30-1, Ex. 1, ¶ 5).
[4] Authenticated by the declaration of Mitchell Nowicki (#30-1, p. 14).
[5] Authenticated by the declaration of Judy Mosher, custodian of records for Renown Regional Medical Center (#41-1, p. 2).

by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.     Analysis**

Defendant Good contends that he did not act with deliberate indifference to plaintiff's serious medical needs (#30, p. 6). Specifically, defendant Good asserts that after he contacted plaintiff, no more than thirty minutes elapsed before he requested emergency medical aid (#35, p. 4). Defendant Good also asserts that there is no evidence that any alleged delay in plaintiff's medical treatment caused plaintiff to sustain further injury. *Id.*

**1.   Fourteenth Amendment Deliberate Indifference to a Serious Medical Need**

A pre-trial detainee's claim of inadequate medical care arises under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996); *see Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). However, the Fourteenth Amendment affords rights at least as great as the Eighth Amendment, and courts apply the same standard to a pre-trial detainee's claim of deliberate indifference under the Fourteenth Amendment as to a prisoner's claim under the Eighth Amendment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983); *Pierce*, 526 F.3d at 1205.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and

that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Plaintiff alleges that defendant Good exhibited deliberate indifference to plaintiff's serious medical needs by refusing to allow plaintiff to be transported to the hospital for "several hours," despite plaintiff's complaints of excruciating pain and profuse bleeding from plaintiff's head wound (#6-1, pp. 5-6). Even assuming *arguendo* that the alleged pain and blurred vision associated with plaintiff's head wound constituted a serious medical need, the court finds that defendant Good did not exhibit deliberate indifference to plaintiff's medical condition.

First, contrary to plaintiff's assertions, defendant Good did not force plaintiff to wait "several hours" before receiving medical assistance. The record indicates that defendant Good arrived at the scene of the attempted grand theft auto at 4:11 a.m. (#30-1, Ex. 1, ¶ 2; #30-1, Ex. 2, p. 2). By the time defendant Good arrived, three other officers had already reported to the scene, had handcuffed plaintiff, and had taken plaintiff into custody (#30-1, Ex. 1, ¶ 4). Defendant Good spoke with the victims and recorded their statements. *Id.* At approximately 4:29 a.m., Officer Cragg placed plaintiff in the rear of defendant Good's patrol vehicle. *Id.* at ¶ 6. However, defendant Good was not in the vehicle at that time. *Id.* When defendant Good finished his investigation, he contacted plaintiff and advised him of his *Miranda* warnings.[6] *Id.* Plaintiff stated that he wished to speak with defendant Good, and then they discussed plaintiff's involvement with the reported attempted grand theft auto (#30-1, Ex. 1, ¶ 6; #30-1, Ex. 3, p. 4).

During this conversation, defendant Good noticed that plaintiff had dried blood on the left side of his face and a large bump on the back of his neck (#30-1, Ex. 1, ¶ 6). Defendant Good also observed that plaintiff was not "actively bleeding" and did not appear to be in acute distress. *Id.*

---

[6] The record reflects that defendant Good contacted plaintiff at some time between 4:29 a.m. and 5:02 a.m. (#30-1, Ex. 1, ¶¶ 6-7).

However, plaintiff told defendant Good that his head hurt. *Id.* Accordingly, at 5:02 a.m., defendant Good called dispatch and asked them to send a REMSA ambulance unit to the scene for a "conscious breathing subject with a head injury who [is] complaining of pain." *Id.* at ¶ 7. The ambulance arrived six minutes later. *Id.* Considering plaintiff's relatively minor injuries, and considering the short time between defendant Good's first contact with plaintiff (sometime after 4:29 a.m.) and his decision to call medical responders to assess plaintiff's injuries (5:02 a.m.), the court finds that defendant Good did not ignore an excessive risk to plaintiff's health or safety.

Secondly, defendant Good did not disregard plaintiff's medical condition. Instead, defendant Good personally ensured that plaintiff received the medical treatment recommended by the REMSA technicians, even after plaintiff refused to allow the REMSA technicians to transport him to the hospital. When the REMSA technicians evaluated plaintiff's condition, they found that he was alert and spoke clearly and concisely, although he was not "actively cooperative" and refused to assist the medical technicians with his assessment (#30-1, Ex. 4). The medical technicians noted that although plaintiff had a small laceration on the left side of his head, plaintiff's chief complaint was of right arm pain. *Id.* Plaintiff also denied being lightheaded or dizzy and stated that he did not have blurred vision. *Id.* The REMSA technicians informed defendant Good that even though plaintiff did not want to go to the hospital with them, plaintiff should be taken to the hospital for a CAT scan (#30-1, Ex. 1, ¶ 7; #30-1, Ex. 3, p. 4; #30-1, Ex. 4). Consequently, at 5:20 a.m., defendant Good took the initiative to drive plaintiff to Renown Regional Medical Center himself (#30-1, Ex. 1, ¶ 8). Because of defendant Good's actions, plaintiff was able to receive a CAT scan shortly after his injury. There is simply no basis for concluding that defendant Good denied, delayed, or intentionally interfered with plaintiff's medical treatment. See *Hutchinson*, 838 F.2d at 394.

Finally, although plaintiff alleges that his vision has deteriorated due to delayed and insufficient treatment, "[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Plaintiff has advanced no evidence, other than his own beliefs, to substantiate his allegation that his vision deteriorated because he received medical treatment a few minutes later than he might have received medical treatment if defendant Good had immediately rushed plaintiff to the hospital. Plaintiff has also submitted no evidence to support his claim that an unidentified prison doctor found that the blow from the metal pipe caused plaintiff to suffer an eye injury, which has steadily worsened over time (#6-1, p. 7). Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In addition, plaintiff was examined by REMSA medical technicians and by Dr. Gary Gansert within a short time after plaintiff was hit with the metal pipe. These medical providers found that plaintiff had a headache and a superficial laceration on his forehead, but that plaintiff was also alert, had not lost consciousness, could speak clearly and concisely, was not lightheaded or dizzy, and had no neck pain, blurred vision or double vision (#30-1, Ex. 4; #30-1, Ex. 5). Further, the results of plaintiff's CAT scan came back normal. *Id.* Dr. Gansert merely prescribed plaintiff some Vicodin, as needed, for pain. *Id.* Accordingly, even if defendant Good marginally delayed plaintiff's medical treatment by not immediately contacting REMSA after he observed plaintiff's injuries, the court finds that plaintiff has not established that he suffered any harm from this minor delay.

Plaintiff's claim that defendant Good exercised deliberate indifference to plaintiff's serious medical need is contrary to the evidence before the court. Plaintiff has failed to demonstrate the existence of any genuine issue of material fact; and has failed to produce any evidence to suggest

that defendant Good acted in conscious disregard of a significant risk to plaintiff's health. Accordingly, the court recommends that defendant's motion for summary judgment (#30) be granted.[7]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendant Good did not exhibit deliberate indifference to plaintiff's serious medical needs. Defendant Good is entitled to summary judgment in his favor, as there are no genuine issues of material fact for trial. Accordingly, the court recommends that defendant's motion for summary judgment (#30) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment (#30) be **GRANTED**.

DATED: April 4, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] Because the court recommends granting summary judgment, the court need not reach the issue of qualified immunity.